1   rANDREW S. WONG (SBN 198227)
    Email: andrew.wong@dechert.com
2   CATHERINE L. CARLISLE (SBN 298316)
    Email: catherine.carlisle@dechert.com
3   DECHERT LLP
    US Bank Tower
4   633 West 5th Street, 37th Floor
    Los Angeles, CA 90071-2013
5   Telephone: +1 213 808 5700
    Facsimile: +1 213 808 5760
6
7   STEVEN A. ENGEL (*pro hac vice*)
    Email: steven.engel@dechert.com
8   DECHERT LLP
    1900 K Street, NW
9   Washington, DC 20006
    Telephone: +1 202 261 3300
10  Facsimile: +1 202 261 3333

11  Attorneys for Defendants
    LINDSAY ROSENWALD, MIKE WEISS, OPUS
12  POINT PARTNERS, MUSTANG BIO, INC. (a/k/a
    MUSTANG THERAPEUTICS, INC.),
13  CITY OF HOPE, and FORTRESS BIOTECH, INC.
    (f/k/a CORONADO BIOSCIENCES, INC.)

14                UNITED STATES DISTRICT COURT

15        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16

17  WINSON TANG,                          Case No. 2:16-cv-1317-MWF-PLA

18              Plaintiff,                 **MEMORANDUM OF LAW IN
                                           OPPOSITION TO PLAINTIFF'S
19  v.                                     MOTION TO REMAND**

20  LINDSAY ROSENWALD, et al.,
                                           Hon. Michael W. Fitzgerald
21              Defendants.                Date: April 25, 2016
                                           Time: 10:00 a.m.
22                                         Place: Courtroom 1600

23                                         Action Filed: January 15, 2016
24                                         Action Removed: February 25, 2016

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 2

III.   STANDARD OF REVIEW ........................................................................ 5

IV.    THE CLAIMS AGAINST COH ARE INSUBSTANTIAL AND DEMONSTRATE FRAUDULENT JOINDER .......................................... 6

   A.   Dr. Tang's Third Cause Of Action (for Breach of Contract) Fails To State A Claim Against COH ........................................... 6

      1.   Dr. Tang Does Not Allege The Existence Of A Contract .......... 7

      2.   Dr. Tang Does Not Allege He Provided Any Consideration ................................................................. 9

      3.   Dr. Tang Does Not Allege That COH Breached The Contract ...................................................................... 9

      4.   Dr. Tang Does Not Allege How COH Damaged Him ............. 10

      5.   Dr. Tang's Reference To A Statement In The Joint Rule 26(f) Report Has No Relevance To The Third Cause of Action ......................................................................... 11

   B.   Dr. Tang's Fourth Cause Of Action (For Promissory Estoppel) Fails To State A Claim Against COH ...................... 12

   C.   Dr. Tang's Sixth Cause Of Action (For Breach Of The License Agreement) Fails To State A Claim Against COH ............... 15

      1.   Dr. Tang Was Not A Third-Party Beneficiary To The License Agreement ................................................... 15

      2.   Dr. Tang Was Not A Creditor Third-Party Beneficiary To The License Agreement ............................................. 18

      3.   Dr. Tang Fails To Plead Any Other Elements of a Breach of Contract ................................................................. 19

V.     COH IS NOT A NECESSARY PARTY TO THIS ACTION ...................... 19

VI.    CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) .................................................................. 10

*Aquilar v. Int'l Longshoremen's Union Local #10*,
   966 F.2d 443 (9th Cir. 1992) .................................................................... 13

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .................................................................. 13

*Be In, Inc. v. Google Inc.*,
   No. 12–CV–03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ....................7

*Bear Valley Family, L.P. v. Bank Midwest, N.A.*,
   No. ED CV 10-905, 2010 WL 3369600 (C.D. Cal. Aug. 23, 2010)...................6

*Benasra v. Marciano*,
   92 Cal. App. 4th 987 (2001) ...................................................................... 16

*Benedict v. Hewlett-Packard Co.*,
   No. 13-CV-00119, 2014 WL 234218 (N.D. Cal. Jan. 21, 2014) ...................... 19

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006)................................................................7, 8, 9

*Buttram v. Owens-Coming Fiberglas Corp.*,
   16 Cal. 4th 520 (1997)................................................................................ 10

*COAC, Inc. v. Kennedy Engineers*,
   67 Cal. App. 3d 916 (1977) ....................................................................... 19

*CSI Elec. Contrs., Inc. v. Zimmer Am. Corp.*,
   No. CV 12–10876, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013).....................7

*Dole Food Co., Inc. v. Super. Ct.*,
   242 Cal. App. 4th 894 (2015)........................................................................8

*Fristoe v. Reynolds Metals Co.*,
   615 F.2d 1209 (9th Cir. 1980) .....................................................................4

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
343 F.3d 1000 (9th Cir. 2003) ........................................................................ 13

*Grey v. Am. Mgmt. Servs.*,
204 Cal. App. 4th 803 (2012) ......................................................................... 17

*Hunter v. Philip Morris USA*,
582 F.3d 1039 (9th Cir. 2009) .......................................................................... 6

*In re NVIDIA GPU Litig.*,
No. C 08–04312, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ..................... 15

*Kearney v. Hyundai Motor Am.*,
No. SACV09-1298, 2010 WL 8251077 ........................................................... 15

*Khashan v. Ghasemi*,
No. CV 10-00543, 2010 WL 1444884 (C.D. Cal. Apr. 5, 2010) ........................ 5

*Lake Almanor Assocs. L.P. v. Huffman-Broadway Grp., Inc.*,
178 Cal. App. 4th 1194 (2009) ....................................................................... 18

*Moncada v. W. Coast Quartz Corp.*,
221 Cal. App. 4th 768 (2013) ......................................................................... 13

*Moore v. Wells Fargo Bank, N.A.*,
No. 14cv1342, 2014 WL 4355585 (S.D. Cal. Sept. 3, 2014) ............................. 7

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061 (9th Cir. 2001) ..................................................................... 5, 19

*Neumann v. Allstate Ins. Co.*,
No. 14-55275, 2016 WL 878823 (9th Cir. Mar. 8, 2016) .................................. 7

*Neverkovec v. Fredericks*,
74 Cal. App. 4th 337 (1999) ........................................................................... 15

*Newgent v. Wells Fargo Bank, N.A.*,
No. 09cv1525, 2010 WL 761236 (S.D. Cal. Mar. 2, 2010) .............................. 14

*Patriot Sci. Corp. v. Korodi*,
504 F. Supp. 2d 952 (S.D. Cal. 2007) ........................................................ 13, 14

*Podolsky v. First Healthcare Corp.*,
50 Cal. App. 4th 632 (1996) ............................................................................. 8

Dechert LLP
Attorneys At Law
London

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir. 1996) ........................................................................ 8

*Rockridge Trust v. Wells Fargo, N.A.*,
  985 F. Supp. 2d 1110 (N.D. Cal. 2013) ........................................................ 7

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................... 13

*Sanguinetti v. Viewlogic Sys.*,
  No. C 95 2286, 1996 WL 33967 (N.D. Cal. Jan. 23, 1996) .......................... 21

*SEC v. Fishoff*,
  No. 3:2015-cv-03725 (D.N.J.) .................................................................. 1, 3

*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) .................................................................. 20

*Smith v. City & Cnty. of S.F.*,
  225 Cal. App. 3d 38 (1990) ...................................................................... 13

*Sowinski v. Wells Fargo Bank, N.A.*,
  No. 11–6431, 2013 WL 706825 (N.D. Cal. Feb. 26, 2013) ............................ 7

*Stein v. Bank of Am., N.A.*,
  No. 2:10-cv-02827, 2011 WL 4594916 (E.D. Cal. Feb. 23, 2011) ................ 11

*Stevenson v. S.F. Housing Authority*,
  24 Cal. App. 4th 269 (1994) ...................................................................... 8

*Takeda v. Nw. Nat. Life. Ins. Co.*,
  765 F.2d 815 (9th Cir. 1985) .................................................................... 20

*Twaite v. Allstate Ins. Co.*,
  216 Cal. App. 3d 239 (1989) ...................................................................... 7

*U.S. Ecology, Inc. v. State*,
  129 Cal. App. 4th 887 (2005) .................................................................... 13

*Weddington Prods., Inc. v. Flick*,
  60 Cal. App. 4th 793 (1998) ...................................................................... 9

*Yari v. Producers Guild of Am., Inc.*,
  161 Cal. App. 4th 172 (2008) .................................................................... 13

## STATUTES

18 U.S.C. 1332(a) ................................................................................................ 5

28 U.S.C. § 1441 ............................................................................................ 3, 5

28 U.S.C. § 1441(b)(1) ........................................................................................ 4

Cal. Civ. Code § 389 .......................................................................................... 20

Cal. Civ. Code § 1550 ........................................................................................ 15

Cal. Civ. Code § 1559 ........................................................................................ 15

Cal. Civ. Code § 1565 ........................................................................................ 15

Cal. Civ. Code § 1580 ........................................................................................ 15

Fed. R. Civ. Proc. 19(a) ................................................................................ 20, 23

Fed. R. Civ. Proc. 19(a)(1)(B) ........................................................................... 19

## I.    INTRODUCTION

Defendant Mustang Bio, Inc. ("Mustang") planned to hire Plaintiff Winson Tang as its chief operating officer, but he lost that chance after the Securities and Exchange Commission ("SEC") named him as the tippee in an insider trading scheme at another biotech company.  *See SEC v. Fishoff*, No. 3:2015-cv-03725 (D.N.J.).  Frustrated by the loss of this opportunity, Dr. Tang has brought this lawsuit against Mustang and its principals, New York and Delaware citizens, alleging a vested right to 15% of the entire company, apparently as a finder's fee, even though his draft employment agreement (which was never finalized) had contemplated his earning those shares through service and performance over time.

This Court plainly has diversity jurisdiction over this action.  The plaintiff, a California resident, has sued five out-of-state residents, whom he variously (and inconsistently) claims had promised him 15% of Mustang's shares.  Because there is complete diversity among all properly joined parties (the "Mustang Defendants"), and the amount in controversy exceeds $75,000, this action falls within the diversity jurisdiction of this Court, and the Motion to Remand should be denied.

Dr. Tang challenges this Court's jurisdiction because he has fraudulently joined one non-diverse defendant, City of Hope ("COH"), in a transparent effort to destroy federal jurisdiction.  Dr. Tang's initial complaint did not seek any relief against COH.  The Complaint did not allege any acts that COH had taken to breach any legal duty to plaintiff, but instead claimed that COH was a "necessary party" because it owned 10% of the shares of Mustang, and Dr. Tang was seeking to order the Mustang Defendants to award him 15% of Mustang's shares.  However, COH's share in Mustang will not change at all, regardless whether or not Dr. Tang succeeds in this litigation.  Thus, COH was plainly not a necessary or a proper defendant at the time this action was removed.

Recognizing the deficiencies of the original Complaint, Dr. Tang responded by amending the Complaint for the sole purpose of stating claims against COH.  In

the Amended Complaint, Dr. Tang has invented an "oral contract" pursuant to which COH supposedly agreed to negotiate a future license with a not yet created "'Newco' owned, in part, by Dr. Tang."  Am. Compl. ¶ 38.  This is truly a frivolous claim.

Dr. Tang's allegations of an oral contract, and his alternative claim for promissory estoppel, are entirely conclusory.  Among these various deficiencies, Dr. Tang alleges, not a contract, but merely an agreement to start negotiations, particularly given that the "Newco" did not exist and the parties are not alleged to have agreed upon any of the license's terms.  In addition, while alleging that COH had promised to include him in any future license agreement, Dr. Tang does not allege any consideration at all that *he* provided to COH or anything he did in reliance for this propose.  Dr. Tang cannot destroy diversity jurisdiction by fraudulently joining COH.  The Motion to Remand should be denied.

## II.   STATEMENT OF FACTS

As alleged in the Amended Complaint, on July 7, 2013, Dr. Tang contracted with Opus Point Partners ("Opus"), a biotech investment fund, to provide information concerning emerging medical technologies and to work together to license them.  Am. Compl. ¶ 11.  A year later, Dr. Tang informed Dr. Rosenwald, a principal of Opus, about COH's CAR-T technology, a promising new cancer treatment.  *Id.* ¶ 12.  Dr. Rosenwald, his partner, Mr. Weiss, and Dr. Tang then proceeded to negotiate a license agreement with COH.  *Id.* ¶¶ 13-20.  Dr. Rosenwald and Mr. Weiss created and funded Mustang to license the technology, and Mustang and COH entered into a license agreement on March 17, 2015 (the "License Agreement").  *Id.* ¶ 20.

The Mustang Defendants expected that Dr. Tang would play an executive role at Mustang and have the chance to earn an equity interest in compensation.  In the spring of 2015, the Mustang Defendants and Dr. Tang negotiated an employment agreement and exchanged drafts; the written correspondence between

1  the sides described Dr. Tang as receiving an unvested 15% share in Mustang that,

2  based upon his performance and certain benchmarks, would gradually become

3  vested.  The Mustang Defendants originally contemplated that Dr. Tang would

4  become the CEO of Mustang, but after COH objected, discussed his assuming the

5  role of COO.  As of June 2015, the parties were still discussing Dr. Tang's role, and

6  had not yet entered into a binding employment agreement.

7          On June 3, 2015, the SEC commenced the *Fishoff* action, which named Dr.

8  Tang, then Vice President of Clinical Research at Sangamo, as Insider A in an

9  insider trading scheme.  According to the SEC's complaint, prior to Sangamo's

10 announcing a licensing agreement with Biogen Idec, Inc., Dr. Tang leaked

11 information about those negotiations to a friend, who passed that information on to

12 traders who netted $1.2 million off of it.  Dr. Tang's material involvement in the

13 *Fishoff* case made it impossible for him to serve as an officer of Mustang.  As a

14 start-up company, Mustang's business plan contemplates the ability to raise capital

15 from public markets, and such efforts would be impossible if one of its senior

16 officers was involved in an insider trading scheme.  The Mustang Defendants

17 discussed with Dr. Tang other opportunities and compensation, but he refused those

18 overtures and claimed a vested 15% ownership in Mustang, even though he had not

19 performed services for the company and would not in the future.  The Mustang

20 Defendants have founded dozens of biotech companies, and have never provided a

21 15% vested share to someone who had neither performed an executive role nor

22 invested any money.  Dr. Tang knows full well that no one receives a 15% share as

23 a "finder's fee," and any entitlement to an equity stake would have vested only after

24 years of service.

25         On January 15, 2016, Dr. Tang filed his initial complaint in Los Angeles

26 County Superior Court, No. BC 607346, alleging breaches of contract, promissory

27 estoppel, and fraud.  On February 25, 2016, Defendants properly removed to this

28 Court under 28 U.S.C. § 1441.

The Notice of Removal demonstrated that (1) complete diversity exists among all ***properly joined*** parties and that the amount in controversy exceeds $75,000, exclusive of interests and costs; and (2) Dr. Tang fraudulently joined COH, the only non-diverse defendant, and thus its presence would not defeat diversity jurisdiction.  Dr. Tang is a citizen of California, and the Mustang Defendants are citizens of New York and/or Delaware.[1]  Am. Compl. ¶¶ 3-9; Mot. to Remand at 2 & n.1.  The damages sought exceed $75,000.  Mot. to Remand at 2 n.2.  The sole issue is whether COH is a proper party to this action.

Defendants showed in their Notice of Removal that COH was not a proper party to the original Complaint because (1) Dr. Tang pled no affirmative claims against COH; and (2) Dr. Tang's claim to be a third-party beneficiary to the License Agreement was insufficiently pled and would not state any claim against COH.  Notice of Removal ¶¶ 11-22.  As Dr. Tang admits in the Motion to Remand, he pled his claim against COH in the alternative, did not identify any wrongful act by COH in breach of any legal duty, and did not seek any relief against it.  Mot. to Remand at 1-2; Notice of Removal ¶¶ 11, 14-18.  Instead, Dr. Tang claimed that he was a third-party beneficiary to the License Agreement between COH and Mustang.  However, these allegations were entirely conclusory and contradicted by others in the Complaint.  Notice of Removal ¶¶ 19-22.

Additionally, Dr. Tang's claim that COH was a necessary party to this action was wrong as a matter of law.  *Id.* ¶ 18.  In his Complaint, Dr. Tang claimed an entitlement to 15% of Mustang's equity, based on a stock ownership chart that identifies COH as a 10% owner.  *Id.*; Ex. B to Notice of Removal; Compl. ¶ 59.  He alleged that he joined COH because "its ownership interest in Mustang and the

---

[1] For reasons unclear, Dr. Tang has named, but not served, fictitious defendants "Does 1–10."  28 U.S.C. § 1441(b)(1) provides that for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  *See also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the citizenship of the Doe Defendants (if they exist) is irrelevant to the remand analysis.

1   license would be diluted if Dr. Tang is also a 15% capital stock holder." Compl.

2   ¶ 59.  But that is untrue.  Even if Dr. Tang received his 15%, that would have no

3   legal effect on COH, because it received 10% as consideration under the License

4   Agreement, no matter whether Dr. Tang was part of the company.  Dr. Tang has not

5   alleged, and cannot allege, that COH's 10% share would change one whit if Dr.

6   Tang receives the relief he seeks.  Notice of Removal ¶ 18.

7        Shortly after Defendants removed, Dr. Tang filed an Amended Complaint on

8   March 14, 2016.  The sole purpose of these amendments was to buttress the non-

9   existent claims against COH and to support his anticipated Motion to Remand.  In

10  addition to repeating the claim that COH is a necessary party and that Dr. Tang is a

11  third-party beneficiary to the License Agreement, Am. Compl. ¶¶ 60-67, Dr. Tang

12  now alleges that COH somehow orally agreed *with him* to license its technology to

13  a to-be-formed company in which he would have an ownership interest; he also

14  tacks on a promissory estoppel claim, *id.* ¶¶ 37-50.  The weakness of the new

15  claims only confirms that COH has been fraudulently joined.

16  **III.   STANDARD OF REVIEW**

17        Pursuant to 28 U.S.C. § 1441, Defendants may remove to federal court an

18  action filed in state court if there is complete diversity among all *properly joined*

19  and served parties and the amount in controversy exceeds $75,000, exclusive of

20  interests and costs.  28 U.S.C. § 1441; *see also* 18 U.S.C. 1332(a).  The presence of

21  a non-diverse defendant will not defeat removal if that defendant was fraudulently

22  joined.  As the Ninth Circuit has recognized, the "[j]oinder of a non-diverse

23  defendant is deemed fraudulent, and the defendant's presence in the law suit is

24  ignored for purposes of determining diversity, if the plaintiff fails to state a cause of

25  action against a resident defendant, and the failure is obvious according to the

26  settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067

27  (9th Cir. 2001) (internal quotation marks omitted); *see also Khashan v. Ghasemi*,

28  No. CV 10-00543, 2010 WL 1444884, at *2 (C.D. Cal. Apr. 5, 2010) (recognizing

that the fraudulent joinder doctrine reflects "a Congressional intent to prevent the fraudulent joinder of forum defendants in order to avoid removal").  If there is no possibility that a plaintiff can establish liability against a defendant, then joinder is fraudulent.  *See, e.g.*, *Bear Valley Family, L.P. v. Bank Midwest, N.A.*, No. ED CV 10-905, 2010 WL 3369600, at *2 (C.D. Cal. Aug. 23, 2010).  The Ninth Circuit permits district courts to consider facts outside the complaint to identify "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009).

In this action, the parties do not dispute that complete diversity exists between Dr. Tang and the Mustang Defendants, and there is no dispute that the amount in controversy exceeds $75,000.  The sole dispute is to whether COH has been fraudulently joined, that issue admits of only one answer.  Dr. Tang clearly does not state any claims against COH, and this action was the Motion to Remand thus should be denied.

## IV.   THE CLAIMS AGAINST COH ARE INSUBSTANTIAL AND DEMONSTRATE FRAUDULENT JOINDER

Dr. Tang names COH as a defendant on three claims:  the Third Cause of Action alleges that COH breached an oral contract to negotiate a license agreement with a to-be-created entity that would be partially owned by Dr. Tang; the Fourth Cause of Action tries to describe those same allegations as a claim for promissory estoppel; and the Sixth Cause of Action alleges that Dr. Tang had rights as a third-party beneficiary to the License Agreement between COH and Mustang.  All three claims are insubstantial and demonstrate that COH has been fraudulently joined.

### A.   Dr. Tang's Third Cause Of Action (for Breach of Contract) Fails To State A Claim Against COH

Dr. Tang's third cause of action posits the existence of "an oral contract pursuant to which City of Hope agreed to license the CAR-T technology to a

'Newco' owned, in part, by Dr. Tang."  Am. Compl. ¶ 38.  To state a claim for breach of contract, a plaintiff must allege sufficient facts to show:  "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff therefrom."  *Neumann v. Allstate Ins. Co.*, No. 14-55275, 2016 WL 878823, at *1 (9th Cir. Mar. 8, 2016) (quoting *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008)).  Dr. Tang does not plead facts to establish the existence of the contract, much less any of the other elements of his claim.

### 1.  Dr. Tang Does Not Allege The Existence Of A Contract

In order to properly allege the existence of a contract, the plaintiff must set forth sufficient facts showing mutual assent, sufficiently definite contractual terms, and consideration.  *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1141-42 (N.D. Cal. 2013) (citing *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006)); *see also* Cal. Civ. Code §§ 1580, 1550, 1565.  To show mutual assent, the plaintiff must offer more than a conclusory assertion that the parties "agreed" to certain terms or that the parties entered into negotiations over future agreements.  *See, e.g.*, *Be In, Inc. v. Google Inc.*, No. 12–CV–03373, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013); *CSI Elec. Contrs., Inc. v. Zimmer Am. Corp.*, No. CV 12–10876, 2013 WL 1249021, at *3 (C.D. Cal. Mar. 25, 2013).

In addition, a plaintiff alleging an oral contract must set forth that agreement in sufficiently definite terms.  *See Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989); *Sowinski v. Wells Fargo Bank, N.A.*, No. 11–6431, 2013 WL 706825, at *5 (N.D. Cal. Feb. 26, 2013) (granting motion to dismiss for plaintiff's failure to plead "exact terms" of an oral contract); *Moore v. Wells Fargo Bank, N.A.*, No. 14cv1342, 2014 WL 4355585, at *4 (S.D. Cal. Sept. 3, 2014) ("A claim for breach of an oral contract must 'set forth the substance of its relative terms.'") (citing *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965)).  The plaintiff must show the existence of mutual binding promises, or some other indication of

consideration. *See, e.g.*, *Stevenson v. S.F. Hous. Auth.*, 24 Cal. App. 4th 269, 284 (1994); *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 655 (1996); *Dole Food Co., Inc. v. Super. Ct.*, 242 Cal. App. 4th 894, 911 (2015).

As relevant here, the California courts have regularly made clear that an "agreement to agree" is "unenforceable under California law." *Bustamante*, 141 Cal. App. 4th at 214. Where a party, such as COH, manifests a "willingness to enter into a bargain," the California courts will not deem this a valid contractual offer if the person to whom it was addressed "knows or has a reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.* (quoting *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 59 (1988)). As the Ninth Circuit has recognized, "there is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996).

The Amended Complaint contains vague allegations concerning an oral agreement pursuant to which COH supposedly promised Dr. Tang that it would enter into a ***future*** contract – a licensing agreement – with a not yet formed "'Newco' owned, in part, by Dr. Tang." Am. Compl. ¶ 38. Dr. Tang appears to allege that "Newco" later became Mustang. *Id.* ¶¶ 17-19, 40. The Amended Complaint, however, is not entirely clear upon when this oral contract was made. In one paragraph, it alleges that the parties reached such an agreement on November 13, 2014, *id.* ¶ 38, and in another, at some point "[b]etween November 2014 and March 2015," *id.* ¶ 18. The Amended Complaint does not make any other allegations concerning the terms of this alleged oral agreement; the scope of COH's duty to enter into a future licensing agreement; the terms of such a license; and the size of Dr. Tang's ownership interest that would satisfy the supposed obligation that it be "partially owned" by him. In addition, the Amended Complaint does not identify any consideration that ***Dr. Tang*** agreed to provide to COH in return for its

1   supposed agreement to ensure that he would be a shareholder in the future

2   company.

3       As pled, the alleged oral promise cannot possibly be a legal contract.  There

4   are no allegations of any agreement at all, but at best, it would be an "agreement to

5   agree" that is "unenforceable under California law."  *Bustamante*, 141 Cal. App.

6   4th at 214; *see also Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 803-04

7   (1998) (there is no meeting of the minds for a license agreement where material

8   terms were not settled).  At the time of the alleged promise, Mustang, the eventual

9   licensee, did not even exist, since the oral contract purportedly concerned an

10   unnamed "Newco."  Dr. Tang does not, and cannot, allege that the parties had

11   agreed on any of the material (or nonmaterial) terms of the future license.  Dr. Tang

12   alleges only that COH agreed to enter into negotiations over a future license, a

13   classic "agreement to agree," that does not involve any meeting of the minds and

14   cannot be enforced.

15       2.  <u>Dr. Tang Does Not Allege He Provided Any Consideration</u>

16       In addition to failing to allege the terms of any agreement, Dr. Tang does not

17   allege that he provided COH with any consideration in return for its supposed

18   promise.  The Amended Complaint offers the conclusory assertion that Dr. Tang

19   "performed all terms and conditions" of the oral contract. Am. Compl. ¶ 39.  Yet

20   Dr. Tang neglects to allege a single term or condition the he promised to meet,

21   much less any consideration that he provided COH.  Even if Dr. Tang had plausibly

22   alleged that COH had made a promise to him, Dr. Tang has not alleged that he

23   provided any consideration in return, and therefore, that promise would not

24   constitute a legally enforceable contract.

25       3.  <u>Dr. Tang Does Not Allege That COH Breached The Contract</u>

26       Dr. Tang does not coherently allege that COH breached its agreement.  At

27   Dr. Tang's urging, and allegedly with his full participation and consent, COH

28

agreed to license the technology to Mustang.  *Id.* ¶¶ 18-20.[2]  The Amended Complaint does not contain a single allegation that COH did something contrary to Dr. Tang's wishes.  Indeed, Dr. Tang claims that he has a legal right to own 15% of Mustang, and if he is correct, then COH plainly would have complied with its obligations under the supposed "oral contract."  If Dr. Tang is not correct (as the Mustang Defendants contend), then that would be because Dr. Tang had not earned his interest in Mustang.  It would not be because COH did anything to breach an oral agreement with Dr. Tang.

The Amended Complaint does not identify a single act that COH took in breach of its supposed contract.  The Amended Complaint offers the conclusory allegation that "Defendants, including City of Hope" have claimed that he lacks any interest in Mustang.  *Id.* ¶ 40.  COH has never had any occasion or any interest in taking a position on Dr. Tang's shares.  As the Amended Complaint makes clear, that issue is between him and the other Defendants.  All COH is alleged to have done is to have licensed the technology, with Dr. Tang's consent and participation, to Mustang, an entity in which he claims he has an interest.  Dr. Tang does not identify any breach of contract by COH.

### 4. Dr. Tang Does Not Allege How COH Damaged Him

The Amended Complaint also does not contain any allegations that COH caused him any injury.  As the Ninth Circuit has recognized, "[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage."  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *see also Buttram v. Owens-Coming Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997) ("[T]o be actionable, harm must constitute something more than nominal

---

[2] The Amended Complaint emphasizes that an exhibit to the License Agreement between COH and Mustang identified Dr. Tang as a 15% shareholder in Mustang. An exhibit to a License Agreement to which he is not a party cannot confer upon Dr. Tang any vested right to Mustang shares, but it certainly does confirm that COH, in entering into the License Agreement, did not take any action to breach this supposed oral agreement with Dr. Tang.

MEMORANDOM IN OPPOSITION TO
MOTION TO REMAND

damages, speculative harm, or the threat of future harm-not yet realized."); *Stein v. Bank of Am., N.A.*, No. 2:10-cv-02827, 2011 WL 4594916, at *2-3 (E.D. Cal. Feb. 23, 2011) (dismissing breach of contract claim where plaintiff merely alleged that she "suffered damages . . . caused by Defendants' breach of the agreement.").

Here, Dr. Tang's damages allegations are entirely conclusory.  As in *Stein*, 2011 WL 4594916 at *2-3, he alleges only that "[a]s a direct result of Defendant's breach of contract, he has suffered damages in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court."  Am. Compl. ¶¶ 39-41.  Dr. Tang does not provide any allegations to establish the amount of damages, or how such damages were proximately caused by COH's actions.  These conclusory damages allegations fails to satisfy the pleading requirements of federal or California law.

> 5. Dr. Tang's Reference To A Statement In The Joint Rule 26(f) Report
>    Has No Relevance To The Third Cause of Action

In the Motion to Remand, Dr. Tang argues that a passing statement from the Joint Rule 26(f) Report–concerning COH's position on Dr. Tang's service as Mustang's CEO–reveals that "CoH may actually be the defendant ***most culpable*** for the wrongful disavowal of his promised equity interest in Mustang," because somehow it could have "***induced*** the other Defendant to breach the contracts to which they were parties."  *Id.*  As with the amendments to his Complaint, this argument only confirms the absence of any real claims against COH and underscores why the Motion to Remand should be denied.

Dr. Tang has brought this action because he claims a right to Mustang's equity.  He has never before objected to the fact that he was not Mustang's CEO. Indeed, Mr. Weiss, with Dr. Tang's full knowledge and approval, signed the License Agreement as Mustang's CEO.  Ex. B to Notice of Removal, at 30.  Thus, any implication that Dr. Tang has learned something for the first time from the Joint Rule 26(f) Report or that COH now may be liable to Dr. Tang because Mr.

1    Weiss became CEO is a complete *non sequitur*.

2          More fundamentally, the Amended Complaint does not premise any claims

3    on his interest in serving as an executive at Mustang.  Far from rendering COH

4    "most culpable," the passing remark to COH's position on Dr. Tang's service as

5    CEO is entirely ***irrelevant*** to any argument in his Motion for Remand or any claim

6    in his Amended Complaint.  Dr. Tang has never claimed that any Mustang

7    Defendant breached an obligation to employ him, and thus could hardly have

8    argued that COH induced a breach in that regard.[3]  The fact that Dr. Tang spends

9    nearly as much time as raising this argument as he does in defending his oral breach

10   of contract claim against COH, simply confirms the legal insufficiency of his third

11   cause of action against COH.

12       **B.    Dr. Tang's Fourth Cause Of Action (For Promissory Estoppel)**

13            **Fails To State A Claim Against COH**

14          In the Fourth Cause of Action, Dr. Tang tries to describe the same "oral

15   contract" allegations as a claim that might give rise to promissory estoppel.  Once

16   again, however, the allegations in the Amended Complaint are entirely conclusory,

17   and they cannot possibly give rise to a claim that COH made a concrete promise

18   with an expectation that Dr. Tang would act on it to his detriment.  Indeed, the only

19   "detriment" that Dr. Tang identifies is that he worked to successfully complete a

20   deal between COH and Mustang.  It is impossible to understand how Dr. Tang's

21   participations in negotiations could constitute a "detriment," or how COH could

22   possibly become liable to him because it signed the agreement with Mustang that

23   he had urged COH to complete.

24          To state a claim for promissory estoppel, the plaintiff must plead:  (1) a clear

25   and unambiguous promise; (2) reasonable and foreseeable reliance; (3) detrimental

26   _____

27   [3] COH was impressed by Mr. Weiss and Dr. Rosenwald and required in Article 6.1(a)
     of the License Agreement that they be identified as key personnel who must hold
     "senior management positions" for a period of three years.  *See* Ex. B. to Notice of
28   Removal, art. 6.1.  That does not possibly make COH liable to Dr. Tang for anything.

reliance; and (4) damages. *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 780 (2013); *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005). "The party claiming estoppel must ***specifically*** plead all facts relied on to establish its elements," *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 967 (S.D. Cal. 2007) (citing *Smith v. City & Cnty. of S.F.*, 225 Cal. App. 3d 38, 48 (1990)) (emphasis in original), as opposed to "vague and largely conclusory allegations," *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1130 (N.D. Cal. 2009). The plaintiff must essentially meet the pleading standards for each element of a cause of action for breach of contract, with the exclusion of consideration. *US Ecology*, 129 Cal. App. 4th at 903; *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). Dr. Tang has not pled any of the elements of his promissory estoppel claim with specificity.

First, Dr. Tang fails to plead a clear and unambiguous promise. To be enforceable, a promise must be sufficiently definite so that "a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Aquilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003). "[A]ny promise which is to serve as the basis for a promissory estoppel claim or defense [must] be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir. 2009). Dr. Tang claims that COH promised "that it would license the CAR-T technology to a 'Newco' to be owned in part by Dr. Tang." Am. Compl. ¶ 46. As discussed above, Dr. Tang's vague allegation is not sufficiently definite, because it does not identify any of the boundaries of the promise.

Second, Dr. Tang fails to plead that he reasonably and foreseeably relied upon this promise. Conclusory allegations of reasonable reliance are insufficient; a

1  party must allege facts in support.  *Patriot Sci. Corp.*, 504 F. Supp. 2d at 968 (citing

2  *Smith*, 225 Cal. App. 3d at 48).  However, here again, Dr. Tang offers nothing more

3  than conclusory allegations that "Dr. Tang did in fact reasonably rely on [COH's]

4  promise."  Am. Compl. ¶ 46.  Dr. Tang does not explain how it could possibly be

5  reasonable for him to rely upon COH's alleged promise, given that COH had no

6  control over whether Dr. Tang would obtain equity in Mustang, which is apparently

7  the only basis for his claim.

8  Third, Dr. Tang has not properly pled detrimental reliance.  To do so, the

9  plaintiff must show that on the basis of the promise, he or she made a substantial

10  change of position.  *See Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525, 2010

11  WL 761236, at *6-7 (S.D. Cal. Mar. 2, 2010); *Smith*, 225 Cal. App. 3d at 48.  Dr.

12  Tang, however, alleges only that he "facilitate[ed] the completion of the exclusive

13  license agreement."  Am. Compl. ¶ 46.  Dr. Tang does not explain how, or why, his

14  involvement in negotiations constitutes a legally cognizable "detriment."

15  In addition, Dr. Tang also does not allege that, but for COH's alleged oral

16  promise, he would not have participated in negotiations over the license between

17  Mustang and COH.  Elsewhere in the Amended Complaint, Dr. Tang alleges that it

18  was the Mustang Defendants' promise of his participation in the new venture that

19  led him to work to conclude a License Agreement between Mustang and COH.

20  *See, e.g.*, Am. Compl. ¶¶ 18-19.  Dr. Tang cannot plausibly allege–and he does not

21  allege–that, but for COH's vague promise to him, he would not have worked on the

22  License Agreement.  Dr. Tang may well have hoped to participate in Mustang in

23  the future, but his work towards that end did not depend upon any promise from

24  COH.  The Amended Complaint contains no specific or plausible allegations

25  showing a change of position on the basis of COH's promise.

26  Finally, Dr. Tang does not sufficiently allege damages.  Again, Dr. Tang

27  offers conclusory assertions of damages for an unspecified amount and specific

28  performance of a stock certificate for 15% of Mustang.  *Id.* ¶¶ 49-50.  Such

1   conclusory assertions are insufficient to support a claim of promissory estoppel.

2       **C.**    **Dr. Tang's Sixth Cause Of Action (For Breach Of The**

3             **License Agreement) Fails To State A Claim Against COH**

4         As with the original Complaint, Dr. Tang remains unable to state any claim

5   on his sixth cause of action–the only one pled against COH before–for breach of the

6   alleged obligations owed to him as a claimed creditor third-party beneficiary of the

7   License Agreement.  This cause of action is pled "in the alternative," and would be

8   moot if the claims specifically referencing Dr. Tang's alleged 15% interest in

9   Mustang (not asserted against COH) were to succeed.  Am. Compl. ¶ 61.  In any

10  event, Dr. Tang's allegations that he is a creditor third-party beneficiary of the

11  License Agreement between COH and Mustang are entirely conclusory and

12  contradicted by the terms of the License Agreement itself as well as his other

13  allegations.

14        1.  Dr. Tang Was Not A Third-Party Beneficiary

15           To The License Agreement

16        "[A] person seeking to enforce a contract as a third party beneficiary must

17  plead a contract which was made expressly for his or her benefit and one in which it

18  clearly appears that he or she was a beneficiary."  *Kearney v. Hyundai Motor Am.*,

19  No. SACV09-1298, 2010 WL 8251077, at *10 (C.D. Cal. Dec. 17, 2010 (quoting

20  *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005)); Cal.

21  Civ. Code § 1559.  "Expressly, as used in the statute and case law, means 'in an

22  express manner; in direct or unmistakable terms; explicitly; definitely; directly.'"

23  *In re NVIDIA GPU Litig.*, No. C 08–04312, 2009 WL 4020104, at *6 (N.D. Cal.

24  Nov. 19, 2009) (quoting *Schauer*, 125 Cal. App. 4th at 957).  That a literal

25  interpretation of the contract would result in a benefit to a third-party is insufficient

26  to show that the party is an intended third-party beneficiary.  *Id.*; *Neverkovec v.*

27  *Fredericks*, 74 Cal. App. 4th 337, 348 (1999).  Further, a shareholder/owner of a

28  company who is not expressly made a third-party beneficiary in the agreement is

      - 15 -      

1    only an incidental (not a third-party) beneficiary thereof.  *Benasra v. Marciano*, 92

2    Cal. App. 4th 987, 992-93 (2001).

3        The Amended Complaint does not contain any specific or plausible

4    allegations suggesting that when COH and Mustang entered into the License

5    Agreement, they "expressly" and in "direct or unmistakable terms" did so with the

6    intent of benefiting Dr. Tang.  Indeed, the allegation is not remotely plausible.

7    When Mustang and COH – allegedly with Dr. Tang's involvement – negotiated a

8    license agreement setting forth the terms upon which Mustang would pay for, and

9    receive license for, COH's CAR-T technology, they plainly did so as part of a

10   transaction that would benefit the parties to the License Agreement, not third

11   parties, such as Dr. Tang.

12        The Amended Complaint does not contain any allegations identifying

13   language in the License Agreement that would impose an obligation upon COH or

14   Mustang to provide a benefit to Dr. Tang.  Indeed, it is telling that the Amended

15   Complaint does not even identify which of the parties to the License Agreement

16   was supposed to have the obligation that Dr. Tang now seeks to enforce.  He alleges

17   only that ***all*** Defendants – even those who were not parties to the License

18   Agreement – "knew and intended that the license agreement was for Dr. Tang's

19   specific, individual benefit," Am. Compl. ¶ 62, and that all of these Defendants

20   (collectively) owed obligations to Dr. Tang that they sought to satisfy via the

21   License Agreement, *id.* ¶¶ 62-64.  Beyond such conclusory legal allegations, Dr.

22   Tang provides no facts – much less any plausible facts – that COH (or Mustang)

23   entered into the License Agreement for the purpose of granting him equity.

24        The Amended Complaint not only fails to identify any provisions in the

25   License Agreement that would benefit Dr. Tang, but the terms of the agreement

26   expressly rebut the suggestion that Dr. Tang or any third party had any enforceable

27   rights under the agreement.  The dispute resolution mechanism in the License

28   Agreement names only COH and Mustang as potential parties.  License Agreement

art. 12, Ex. B to Notice of Removal.  Similarly, the assignment and delegation provision bars Mustang from assigning any of its rights or obligations without COH's consent, demonstrating that there was no intent to benefit Dr. Tang or any other third-party. *Id.* art. 14.1.

Additionally, the License Agreement defines a "Third-party" as "a Person that is neither a Party to this Agreement nor an Affiliate of a Party," and uses the terms only in Article 4.9, concerning the royalty offsets to certain third-party licensors. *Id.* arts. 1.38, 4.9.  To the extent that COH or Mustang envisioned the License Agreement as obligating each of them to third parties, such a role was limited to a specific category of third-parties of which Dr. Tang does not claim to be a part.  Finally, the License Agreement contains an integration clause making clear that it was the entire agreement between the parties, and there were no separate promises made to any third party. *Id.* art. 14.2; *see also Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (2012) ("The existence of an integration clause is a key factor in divining" "whether the parties intended the contract to be a final and complete expression of their agreement.").

In addition, although the granting of equity generally is accomplished through detailed agreements intended to comply with federal and state securities laws, the License Agreement does not contain any provisions that would govern the grant of equity to Dr. Tang.  This notably stands in stark contrast to the 10% of Mustang that COH was to receive under the License Agreement, which includes specific provisions concerning (1) the timing of Mustang's issuance of stock to COH; (2) the number of shares Mustang would provide to COH; (3) the class of shares Mustang would provide to COH; (4) the legal effect of certain qualified financings achieved prior to a specified qualified financing protection ceiling; (5) the awarded stock's status as restricted securities not registerable with the SEC; (6) the legal and contractual effect of Mustang's first public offering; and (7) other important issues regarding the stock.  *See* License Agreement art. 4; Ex. B to Notice

of Removal.  If COH and Mustang intended that the License Agreement would provide stock to Dr. Tang, then they would surely have included similarly detailed provisions concerning the scope of his entitlement.

### 2. Dr. Tang Was Not A Creditor Third-Party Beneficiary To The License Agreement

Because Dr. Tang does not sufficiently plead that that he was a third-party beneficiary to the License Agreement, he necessarily does not sufficiently plead that he is a ***creditor*** third-party beneficiary.  Am. Compl. ¶ 65.  "A creditor beneficiary is a party to whom a promisee owes a preexisting duty which the promisee intends to discharge by means of a promisor's performance." *Lake Almanor Assocs. L.P. v. Huffman-Broadway Grp., Inc.*, 178 Cal. App. 4th 1194, 1200 (2009).  By claiming to be a creditor third-party beneficiary, Dr. Tang appears to be alleging that COH had a preexisting duty to provide him with 15% of Mustang's equity, and that COH agreed to use the License Agreement as the vehicle for accomplishing that alleged preexisting duty.  COH, however, did not have any control over Mustang, and Dr. Tang does not allege that COH had a preexisting duty to provide him with 15% of the equity.  Thus, the allegation that Dr. Tang was a creditor to COH under the License Agreement is non-sensical.

Finally, Dr. Tang's other allegations in the Amended Complaint confirm that COH did not intend that the License Agreement would discharge any legal duty owed to Dr. Tang concerning his alleged equity interest in Mustang.  Dr. Tang alleges that, after the execution of the License Agreement, he requested that Mustang provide him his stock and Mr. Weiss promised to work on certain paperwork with regard to this request.  Am. Compl. ¶¶ 21-22.  Dr. Tang's allegations suggest at most that he understand that Mustang – and not COH – owed him the shares.  Moreover, the recognition that additional paperwork would be necessary to award Dr. Tang's alleged equity interest stands directly contrary to Dr. Tang's assertion that he was a creditor third-party beneficiary under the License

1   Agreement, as it shows that the License Agreement itself was not sufficient to

2   impart the duty to Dr. Tang as an alleged creditor.  *See, e.g.*, *COAC, Inc. v.*

3   *Kennedy Engineers*, 67 Cal. App. 3d 916, 918-22 (1977).

4               3.  <u>Dr. Tang Fails To Plead Any Other Elements of a Breach of Contract</u>

5         In addition to failing to sufficiently plead that he is a third-party beneficiary

6   of the License Agreement, Dr. Tang also fails to plead the other elements of a claim

7   for breach of contract in any but conclusory terms.  Thus, Dr. Tang does not

8   identify any actions that COH took to breach the License Agreement.  He alleges

9   only that Mustang failed to provide him the promised shares, not that COH had any

10   control over them under the License Agreement.  Similarly, Dr. Tang's allegations

11   that COH caused him any harm and, indeed, that he suffered any harm, are entirely

12   conclusory.  Am. Compl. ¶ 67; *see also Benedict v. Hewlett-Packard Co.*, No. 13-

13   CV-00119, 2014 WL 234218, at *4 (N.D. Cal. Jan. 21, 2014).  As such, Dr. Tang

14   "fails to state a cause of action" against COH, and that "failure is obvious according

15   to the settled rules of the state."  *Morris*, 236 F.3d at 1067.

16   **V.    COH IS NOT A NECESSARY PARTY TO THIS ACTION**

17         In the original Complaint, Dr. Tang suggested that he had named COH, not

18   because it had actually taken any action in breach of a legal duty, or that it had

19   taken any action to cause him harm, but because as a shareholder in Mustang, COH

20   was a necessary party to the relief he sought from this Court, namely the award of

21   15% of Mustang's equity.  Dr. Tang cites no authority for that proposition, and it is

22   not so.  Dr. Tang has plainly alleged that the Mustang Defendants would provide

23   him 15% of the newly formed company.  While those allegations are plainly

24   deficient (and subject to a pending motion to dismiss), if they were meritorious, the

25   Court could order one or more of the Mustang Defendants to perform, or to pay

26   damages, without the need for COH to be a party to this action.

27         Under Federal Rule of Civil Procedure 19(a)(1)(B), a party is necessary and

28   should be joined if it claims an interest relating to the subject of the action and is so

1   situated that a disposition of the action in its absence may, as a practical matter,

2   impair or impede its ability to protect that interest.  California's joinder rule is

3   similar.  *See* Cal. Civ. Code § 389.  Parties have typically litigated the "necessary

4   party" rule in contexts where the court cannot acquire jurisdiction over the absent

5   defendant, or where the ***plaintiff*** has sought to preserve diversity jurisdiction by

6   failing to bring suit against an indispensable party.  *See Shermoen v. United States*,

7   982 F.2d 1312 (9th Cir. 1992) (holding that absent Indian tribes were necessary to

8   the litigation and could not be joined because of sovereign immunity); *Takeda v.*

9   *Nw. Nat. Life. Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985) (holding that the non-

10  diverse party was "indispensable" to the action and must be joined).  By contrast,

11  here, Dr. Tang seeks to rely upon Rule 19(a) as an excuse to sue a party that is

12  subject to the Court's jurisdiction, but should never have been joined here, because

13  Dr. Tang lacks any legitimate claims against it.

14          Lacking any actionable claims against COH, Dr. Tang argues that he has

15  sued COH because the Court would otherwise be unable to order complete relief or

16  because COH's interests would otherwise be impaired.  To support his claim, Dr.

17  Tang cites *Shermoen*, 982 F.2d at 1317, but in that decision, the Ninth Circuit made

18  clear that is not ***obliged*** to name an absent party, such as COH, absent a concrete

19  showing that the party's interests are likely to be impaired or impeded.  As the

20  Court observed in *Shermeon*, to determine if a party's interests are impaired or

21  impeded by litigation in its absence, the Court applies an adequate representation

22  test.  Under this test, the Court evaluates whether:  (1) the existing parties "will

23  undoubtedly make all of the absent party's arguments"; (2) the existing parties are

24  "capable of and willing to make such arguments"; and (3) "the absent party would

25  offer any necessary element to the proceedings the present parties would neglect."

26  *Id.* at 1318 (internal quotation marks omitted).  Dr. Tang does not claim that COH

27  would make arguments not available to the Mustang Defendants or that COH

28  would add any "necessary element" to the proceeding.

1    Notably, in the context of shareholder suits, courts have recognized that one
2    shareholder may adequately represent the other shareholders' interests, because the
3    shareholders' interests are identical.  *See Sanguinetti v. Viewlogic Sys.*, No. C 95
4    2286, 1996 WL 33967, at *4 (N.D. Cal. Jan. 23, 1996).  As a result, "[the first
5    defendant] will 'undoubtedly make' all the arguments that [the second defendant]
6    otherwise would make.  Thus, [the second defendant's] absence does not as a
7    practical matter impair or impede its ability to protect its interest in this litigation."
8    *Id.*  Here, similarly, to the extent that COH's interests as a shareholder are at issue,
9    COH could expect that the Mustang Defendants will "undoubtedly make" all the
10   arguments that COH otherwise would make, and COH's absence "does not as a
11   practical matter impair or impeded its ability to protect its interest in this litigation."
12   1996 WL 33967, at *4.

13   Dr. Tang also claims that COH is a necessary party because "complete relief
14   cannot be afforded in this action in its absence and the determination in this action
15   could impair CoH's ability to protect its claimed interest in Mustang and the
16   License Agreement, the subject matters of this litigation."  Mot. to Remand, at 7.
17   However, Dr. Tang fails to explain why complete relief could not be afforded in
18   COH's absence.

19   First, Dr. Tang alleges that COH's interests would be impaired because this
20   action would affect the ownership structure of Mustang, a company in which COH
21   owns shares.  *Id.*  However, Dr. Tang does not allege that COH ever promised to
22   give him any Mustang shares, only that Mustang and/or the Mustang Defendants
23   did so.  Dr. Tang offers no legal support for the position that a plaintiff's effort to
24   sue a company or one shareholder for promised shares necessarily requires that
25   plaintiff to implead each and every shareholder to that company.  Indeed, while Dr.
26   Tang's position here is alleged against a company with only a handful of
27   shareholders, his logic would presumably sweep thousands of shareholders if
28   applied to a much larger public company.  That is obviously absurd.

Next, Dr. Tang claims that COH's interests would be impaired because, should he prevail, COH's equity in Mustang might be diluted because his 15% equity in Mustang might come at COH's expense. *Id.* But the terms of the License Agreement rebut this argument. According to Article 4.3 of the License Agreement, COH has a right to "10% of the total number of shares of Qualifying Stock." Ex. B. to Notice of Removal, at Art. 4.3. Dr. Tang's potential 15% equity ownership does not have any effect on the total number of shares of qualifying stock. To the extent that Dr. Tang received additional shares, they would come from the existing stock of the company and would not dilute COH's interests as a result.

Finally, Dr. Tang also claims that COH has an interest in this case, because it "seek[s] a result to which CoH explicitly 'objects.'" Mot. to Remand at 7. Dr. Tang does not cite any case holding that a person not otherwise properly in a litigation may become a necessary party should it "object" to the relief sought by the plaintiff. In any event, the argument itself is completely meritless, because Dr. Tang has misconstrued the Joint 26(f) Report, and COH has not had occasion to take any position on the relief actually sought.

In the Motion to Remand, Dr. Tang claims that Defendants have taken the position that "they could not reach an employment agreement with Tang due to the fact that 'CoH objected.'" *Id.* That is simply a false statement. In the Joint Rule 26(f) Report, Defendants quite clearly argued that Dr. Tang lost the opportunity to serve as an officer of Mustang because the SEC named him as a material participant in a pending insider trading case. *See* Joint Rule 26(f) Report, at 4-5. At the time, Mustang had been negotiating with Dr. Tang to serve as its COO, not as its CEO. In the Joint Rule 26(f) Report, Defendants note in passing that at one point, they had contemplated making Dr. Tang CEO, but that COH had "objected" to that request. Joint Rule 26(f) Report, at 4. That issue, however, has nothing to do with this lawsuit. Dr. Tang has never argued that he had a vested right to become

Mustang's CEO, and he has not filed any claim in this action that would ask this Court to make it so.  COH plainly has not "objected" to a result that Dr. Tang "specifically seek[s]" in this action, and in any event, this issue is irrelevant to the Rule 19(a) analysis.

## VI.    CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court deny Dr. Tang's Motion to Remand.


Dated:    April 4, 2016                                    Dechert LLP


                                                    By:   /s/ Catherine L. Carlisle
                                                        Steven A. Engel (*pro hac vice*)
                                                        Andrew S. Wong
                                                        Catherine L. Carlisle

                                                    Attorneys for Defendants
                                                    LINDSAY ROSENWALD, MIKE
                                                    WEISS, OPUS POINT PARTNERS,
                                                    MUSTANG BIO, INC. (a/k/a
                                                    MUSTANG THERAPEUTICS, INC.),
                                                    CITY OF HOPE, and FORTRESS
                                                    BIOTECH, INC. (f/k/a CORONADO
                                                    BIOSCIENCES, INC.)